## HAVEY v. UNITED STATES.
### No. 45993.

Court of Claims.

Oct. 1, 1945.

This case having been heard by the Court of Claims, the court upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiff, Thomas Edward Havey, first enlisted in the United States Navy on March 3, 1902, and was discharged April 24, 1906; he reenlisted on September 10, 1908, and was discharged on September 9, 1912; he reenlisted on September 10, 1912, and was discharged on September 9, 1916; he reenlisted on September 11, 1916, and was discharged on June 10, 1920; he reenlisted on July 11, 1920, and served until November 15, 1924, when he was transferred to the Fleet Reserve, Class F 3 D, in the grade of Chief Yeoman (P. A.), and on December 3, 1924, he was released from active duty. At the time of his transfer to the Fleet Reserve he was credited with 20 years, 6 months and 26 days service. On October 10, 1929, he was transferred to the retired list on account of physical disability. He completed 30 years' service, including active Naval Service, time on the Fleet Reserve and time on the retired list on April 19, 1934.

2. Immediately prior to June 1, 1942, plaintiff received $110.05 per month as retired pay and allowances, computed as follows:

| | |
|---|---|
| Retired pay (one-half of $126 per month, active duty pay of Chief Yeoman, U. S. Navy, as provided by Act of September 16, 1940, 54 Stat. 895) ................. | $63.00 |
| Maximum longevity pay, based upon more than 16 years' service, as provided by Act of September 16, 1940, supra, (25% of $126)...... | 31.50 |
| "Retired allowances" in lieu of rations, clothing, quarters, fuel and light, as provided by Act of March 2, 1907, 34 Stat. 1217........... | 15.75 |
| Total retired pay and allowances ...................... | 110.25 |

From the total retired pay and allowances due plaintiff there was deducted the sum of $.20 per month for hospital fund, leaving $110.05 as the net amount received by

plaintiff as retired pay and allowances.

3. Subsequent to June 1, 1942, plaintiff received the same amount, namely $110.05, as retired pay and allowances, until March 31, 1943.

Since April 1, 1943, he has received the sum of $110.20 per month as retired pay, computed as follows:

Retired pay (one-half of $138, active duty pay of chief yeoman, first grade, as provided by the act of June 16, 1942, 56 Stat. 359) . . . $69.00

Longevity pay based on more than 18 and less than 21 years' active service (5% for each 3 completed years or 30% of $138) . . . . . . . . . 41.40
_____
Total retired pay . . . . . . . . . . . . 110.40

From the total retired pay due plaintiff there has been deducted the sum of $.20 per month, leaving $110.20 as the net amount of the retired pay received by him each month since April 1, 1943.

4. If plaintiff were entitled to "retired allowances" since June 1, 1942, there would be due him the sum of $204.75, representing such allowances for the period from June 1, 1942, to June 30, 1943, as computed by the General Accounting Office, and additional amounts, not yet computed for the period since June 30, 1943.

Fred W. Shields, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Robert Burstein, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Ralph H. Case, of Washington, D. C., amicus curiae.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff is an enlisted man of the United States Navy who was retired prior to June 1, 1942, the date as of which the provisions of the Pay Readjustment Act of 1942, Act of June 16, 1942, 56 Stat. 359, 37 U.S.C.A. § 101 et seq., became applicable. That act was a comprehensive overhauling of the entire pay system of all of the armed forces. It increased the pay of many classes of persons, especially enlisted men.

It provided in Section 15 that retired enlisted men should have their retired pay computed on the basis of the pay provided in the act, thus automatically giving retired men the same percentages of the increased active duty pay provided in the act, that they had formerly had of the lesser pay formerly provided.

Section 1 of the act of March 2, 1907, 34 Stat. 1217, 10 U.S.C.A. §§ 947, 980 had provided that an enlisted man could, after thirty years of service, retire, if he applied for retirement, and receive as retired pay a stated percentage of the pay he had been receiving, and $15.75 per month as allowances in lieu of rations, quarters, fuel light and heat. The Pay Readjustment Act of 1942, which, as we have said, increased the retired pay of retired enlisted men said, inter alia, in Section 19, 56 Stat. 369, 37 U.S.C.A. § 119:

" * * * and those portions of the Act of March 2, 1907 (34 Stat. 1217), and of the Act of June 30, 1941 [1] (Public Law 140, Seventy-seventh Congress), which authorize allowances for enlisted men on the retired list * * * are hereby repealed: * * *."

It is evident, and the plaintiff agrees, that the general effect of the 1942 Act was to discontinue the payment of allowances, as such, to retired enlisted men. It was thought, apparently, that the increases in pay for active service provided in the 1942 Act, would, when the retired pay percentages were applied to them and the more liberal provision for longevity additions to pay were added, produce an adequate total compensation for retired enlisted men. A man who retired after the Act of 1942 took effect, would, therefore receive no separate allowance of $15.75 in addition to the increased retired pay provided in that Act. But the plaintiff contends that he, as an enlisted man who had gone on the retired list in 1929, was and is entitled, not only to the increased retired pay which he has received under the 1942 Act but to the $15.75 per month of retired allowances which he was receiving before the 1942 Act took effect. He bases this contention upon that part of the following quoted first paragraph of Section 19 of the Act of 1942 which precedes the word "Provided":

"Sec. 19. No person, active or retired, of any of the services mentioned in the title of this Act, including the Reserve

[1] 55 Stat. 394, 10 U.S.C.A. §§ 656, 657, 939, 982a; 38 U.S.C.A. § 26b. This Act, like the 1907 Act, provided for allowances of $15.75 to retired enlisted men.

components thereof and the National Guard, shall suffer, by reason of this Act, any reduction in any pay, allowances, or compensation, to which he was entitled upon the effective date of this Act: Provided, however, That nothing in this Act shall be construed to deprive any enlisted man transferred to the Fleet Reserve on or prior to the date of enactment of this Act, or transferred from the Fleet Reserve to the retired list of the regular Navy for physical disability, of any benefits, including pay, allowances, or compensation, which he would be entitled to receive upon the completion of thirty years under laws in force on the date of enactment of this Act."

The part of the quoted language preceding the proviso makes it plain that the act was not to be allowed to have the effect of decreasing the compensation of any person covered by the act below what he was receiving when the act took effect. Whether it was intended to prevent, distributively, decreases in pay, decreases in allowances, and decreases in any other compensation, even though there was no decrease in the aggregate, is the question upon which the plaintiff's case depends. As the findings show, the plaintiff's increased retired pay and longevity pay under the 1942 Act were slightly more than he had received under the former act as retired pay, longevity pay, and allowances of $15.75 per month, combined.

The plaintiff says that the statute is plain, and should simply be applied as written. We agree that, upon a first reading, it seems to mean what the plaintiff contends. But after a study of the language in its setting, we come to the opposite conclusion. If the plaintiff's reading is followed, there will be discrimination of $15.75, or about 14% in current compensation in favor of all enlisted men who retired before June 1, 1942, as against those who have retired since that date or who will retire in the future. No justification for such discrimination is suggested. It could not be based upon any moral obligation to pay the plaintiff and those similarly situated what the law provided for them while they were in active service, and when they applied for retirement. That moral obligation is fulfilled by the increased pay provided in the 1942 Act which amounts to more than the aggregate, including the $15.75 of allowances, which the plaintiff expected to get when he served and when he retired. It is guaranteed by the quoted provision of Section 19, which, as we interpret it, says that if, in any instance, the new pay does not add up to as much as the old pay and allowances, the larger amount shall nevertheless be paid.

There is no legislative history which is of substantial help in our problem of interpretation. But the plight of the country in 1942, and the perils which were confronting the men in active service, make it inconceivable to us that Congress would have, at that time, intended to enact what would have amounted to a gross discrimination against the men who were to face those perils, and in favor of those who were already in retirement. The plaintiff urges that the colloquy between a Mr. Lofgren, who appeared on behalf of the members of the Fleet Reserve Association, and the members of the Committee on Military Affairs of the House of Representatives, supports his interpretation. See Hearings of that Committee, 77th Congress, 2nd Session, on S. 2025, pp. 79–81, 83–84. As a result of Mr. Lofgren's testimony, the language of the first paragraph of Section 19, quoted above, which begins with the word "Provided", was inserted in the Act. But Mr. Lofgren, as the testimony and the inserted language shows, was interested in a special class of persons, those who had already transferred to the Fleet Reserve on the faith of the then existing statutory provision that they might transfer to the Fleet Reserve and later, because of physical disability, or on completion of thirty years' service, be retired. It seems that, as to them, or some of them, the pay under the new schedules for retired enlisted men would not be as much as the aggregate of pay and allowances which they would have received, upon retirement, if the old schedules had been left in force. Since they were not yet retired, the saving provision at the beginning of Section 19 would not assure them that they would ever get the compensation they had counted on upon retirement. Mr. Lofgren's representations to the Committee placed no emphasis on any separate retirement allowance. He merely showed the Committee how those whom he represented would receive less, upon retirement, under the new law, than the aggregate sums which they had expected to receive, under the old law, when they became eligible for retirement. The Committee adopted his suggestion and inserted the second saving clause of the first paragraph of Section 19, using the same words, "pay, allowances, or compensation"

which were already a part of the language of the first saving clause upon which the plaintiff relies.

The construction by courts of the word "or", as used in a statute or legal instrument, to mean "and" is commonplace. See the innumerable instances in 30 Words and Phrases, Perm. Ed. And there is something in the very fact of a saving clause which suggests, somewhat intangibly, that it is dealing with aggregate comparative results, not with separate items.

We conclude, therefore, that the plaintiff has received the compensation which the statute provides for him, and that his petition must be dismissed.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER, and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.